A97A2169. NATIONAL TREASURY EMPLOYEES UNION
v. MACON-BIBB COUNTY HOSPITAL AUTHORITY.
(496 SE2d 760)

BLACKBURN, Judge.

National Treasury Employees Union (NTEU) appeals the trial court's judgment rendered against it in the underlying negligent misrepresentation action brought by Macon-Bibb County Hospital Authority d/b/a Medical Center of Central Georgia (the Hospital).[1] NTEU asserts several enumerations of error.

"The [Hospital] provided medical care to the newborn son of a federal employee who was an insured under a group insurance policy sponsored by the [NTEU] and issued under the Federal Employees Health Benefits Act (FEHBA), 5 USC § 8901 et seq. The [Hospital] alleged that it provided care after being assured by the insurer that

---

[1] This is the second appearance of this case before us. See *Nat. Treasury Employees Union v. Macon-Bibb County Hosp. Auth.*, 213 Ga. App. 724 (445 SE2d 777) (1994), rev'd, *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557 (458 SE2d 95) (1995). Our Supreme Court determined that the Federal Employees Health Benefits Act (FEHBA) did not preempt the Hospital's action in the underlying case. See *Macon-Bibb County Hosp. Auth.*, 265 Ga. at 560. After remand, a bench trial was had which resulted in the judgment presently before us.

the infant was covered by his mother's insurance policy. When the insurer subsequently denied coverage for the infant, the [Hospital] filed suit . . . seeking damages for NTEU's alleged negligent misrepresentation." *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557 (458 SE2d 95) (1995).

1. In its first enumeration of error, NTEU contends that the trial court erred in concluding as a matter of law that the statements made by NTEU constituted legal misrepresentations despite its factual finding that NTEU provided accurate information to the Hospital concerning insurance coverage for routine childbirth.

The trial court made the following factual findings: "The Plaintiff provided medical treatment to the Defendant's insured involved in the birth of her child. The Plaintiff's representative contacted representatives of the Defendant to verify that coverage was available. The Plaintiff was advised by authorized employees and agents of the Defendant that coverage was available for the insured for the routine childbirth from the moment of birth. The Defendant's insured's policy provided coverage for routine childbirth coverage. The policy required that the child be added to the policy with [sic] thirty (30) days of its birth." NTEU contends that the trial court's factual findings confirm that no inaccurate information was given to the Hospital. However, the trial court's findings state that "coverage was available *for the insured* for the routine childbirth from the moment of birth." The trial court's findings do not address themselves to what the NTEU representative stated with regard to coverage of the newborn. Therefore, NTEU's enumeration is without merit.

2. In its second enumeration of error, NTEU contends that the trial court erred in determining that the Hospital was not contributorily negligent. NTEU argues that the evidence established that the Hospital failed to follow its own established verification policy of asking whether the insured had single or dependent coverage and that the Hospital gave NTEU an incorrect diagnosis when requesting insurance verification.

At trial Mabel Pinkston testified for the Hospital that she talked with Deetra Knight, a NTEU representative, to verify insurance coverage. Pinkston told Knight, "I have Valjeanne Thompson. She is the insured and the patient. She was admitted 5/6/89 at eleven twelve a.m. for childbirth. I need benefits on maternity." Knight informed Pinkston of Thompson's coverage. When Pinkston asked if the baby was covered, Knight responded that the baby was covered from birth. Pinkston testified that "[s]ince she told me, 'Baby covered from birth,' and from my experience with this plan, I knew that the baby's bill would be paid essentially in full or all — as far as I know, all the way in full under the mother's miscellaneous coverage. We don't bill a room on babies. All coverage on babies is covered under mother's or

father's or both's miscellaneous."

Pinkston acknowledged receiving and reviewing a memorandum which set forth guidelines to follow when verifying insurance coverage on obstetric patients and newborns. The memorandum contained the following guideline: "Determine if patient has *single* or *dependent* coverage: *Single coverage* will not cover the newborn; this could prove very costly to our hospital if the newborn is sick or premature. Thus, you should encourage the mother to change policy to dependent coverage and follow-up to insure the change is made. *Dependent coverage*, even if the mother's condition is pre-existing, will provide coverage for a sick or premature neonate."

NTEU argues that because Pinkston did not specifically ask if Thompson had single or dependent coverage that she violated the Hospital's procedures and thus was contributorily negligent. However, when questioned about whether she asked Knight if Thompson had single or dependent coverage Pinkston responded: "Not in those words, but essentially I did. I asked her in words that were familiar to all of us . . . and I asked her the pertinent questions, and according to hospital policy, I got exactly what we needed." If the exact coverage situation was clear between the parties, the infant could have been subsequently added to the insurance contract within 30 days of birth and the policy would have provided coverage from the moment of birth. However, because the Hospital was informed that the baby was covered from birth no steps were taken to add the baby to the mother's coverage. Therefore, as the facts were not plain and indisputable, the trial court, as the trier of fact, did not err as a matter of law in determining that the Hospital was not contributorily negligent on this basis.

NTEU next contends that the Hospital was contributorily negligent when it gave the wrong diagnosis upon obtaining insurance verification. Pinkston told Knight that Thompson's diagnosis was "childbirth." NTEU contends that because Thompson was only 28 weeks pregnant and had ruptured membranes, the diagnosis should have noted the high-risk nature of the delivery and that potential respiratory problems were likely for the newborn. However, although Dr. Dalrymple testified that if Thompson followed the required precautions, she probably had a 50 to 60 percent chance of going into labor, the doctor did not testify that "childbirth" was an incorrect diagnosis. Dr. Dalrymple did testify that she would not have notified the neonatal intensive care unit if she anticipated that Thompson's labor and delivery were going to be routine; however, again, the doctor did not testify that "childbirth" was an incorrect admitting diagnosis.

Issues regarding contributory negligence are resolved by the trier of fact, in this case, the trial court. See *Pique v. Lee*, 218 Ga. App. 357, 358-359 (461 SE2d 302) (1995). Because the facts establish

that more than one conclusion was permissible, we cannot say that the trial court erred as a matter of law in failing to find that the hospital was contributorily negligent.

3. In its final enumeration of error, NTEU contends that the trial court erred in failing to dismiss the complaint because the Hospital, as Thompson's agent pursuant to a power of attorney, had a duty to know the contents of the insurance contract and was not authorized to rely on oral representations in conflict with the terms of the contract. However, as our Supreme Court concluded in its earlier opinion in this case, "the [Hospital's] allegation of negligent misrepresentation is a 'run-of-the-mill' state law claim with too tenuous a connection with the FEHBA contract of insurance to warrant a finding that it 'relates to' the contract." *Macon-Bibb County Hosp. Auth.*, 265 Ga. at 560.

Additionally, the power of attorney signed by Thompson is a limited one. It does not purport to assign all Thompson's rights and benefits in the insurance contract to the Hospital, but merely assigns the insurance benefits and gives the Hospital the authority to complete any forms or release any records required in order to obtain those insurance benefits. This limited power of attorney is distinguishable from the cases cited by NTEU which involved general assignment and subrogation. See *Algernon Blair, Inc. v. Nat. Surety Corp.*, 222 Ga. 672 (151 SE2d 724) (1966) and *Healey v. Morgan*, 135 Ga. App. 915 (219 SE2d 628) (1975).[2] Because the Hospital did not take a general power of attorney or assignment of the insurance contract, it did not stand in Thompson's shoes with regard to NTEU's defenses. Therefore, we find that the trial court did not err in failing to dismiss the Hospital's complaint on these grounds.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED FEBRUARY 4, 1998

*George H. Connell, Jr.*, for appellant.
*Sell & Melton, John A. Draughon*, for appellee.

---

[2] NTEU also relies upon *Home Ins. Co. v. North River Ins. Co.*, 192 Ga. App. 551 (385 SE2d 736) (1989) and *Boynton v. State Farm Mut. Auto. Ins. Co.*, 207 Ga. App. 756 (429 SE2d 304) (1993). They also do not involve a limited power of attorney, but additionally, as they both are physical precedent only, we will not consider them.